

Sharon L. Levine, Esq. (SL 2109)
**LOWENSTEIN SANDLER PC**
65 Livingston Avenue
Roseland, New Jersey 07068-1072
(973) 597-2500
Attorneys for Debtor

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: | Chapter 11 |
| TELEBRANDS CORP., | Case No. 00-39548 (NLW) |
| Debtor. | |

## DEBTOR'S FIRST AMENDED DISCLOSURE STATEMENT

# TABLE OF CONTENTS

List of Exhibits...........................................................................................................iv

INTRODUCTION ......................................................................................................1

ARTICLE I - HISTORICAL BACKGROUND.........................................................3

ARTICLE II - CLASSIFICATION OF CLAIMS AND INTERESTS UNDER THE PLAN .....6

ARTICLE III - TREATMENT OF ADMINISTRATIVE AND TAX CLAIMS ........................7

    3.1    Administrative Claims .............................................................................7

    3.2    Tax Claims .............................................................................................8

ARTICLE IV - TREATMENT OF CLASSES UNDER THE PLAN ..........................................8

    4.1    Satisfaction of Claims...............................................................................8

    4.2    Class 1: Allowed Priority Claims............................................................8

    4.3    Class 2:  Secured Claim of First Union ..................................................8

    4.4    Class 3: Secured Insurance Loan Claims.................................................9

    4.5    Class 4: Claims of Bax ..........................................................................10

    4.6    Class 5: Unsecured Claims....................................................................10

    4.7    Class  6: Equity Interests .....................................................................11

    4.8    Full and Final Satisfaction.....................................................................11

    4.9    Fractional Cents.....................................................................................11

    4.10   De Minimis Payments ..........................................................................11

ARTICLE V - CLASSES OF CLAIMS AND INTERESTS
IMPAIRED AND ENTITLED TO VOTE...................................................................12

    5.1    Impairment............................................................................................12

    5.2    Unimpaired Classes ...............................................................................12

    5.3    Impaired Classes....................................................................................12

ARTICLE VI - MEANS OF IMPLEMENTATION OF THE PLAN...........................................12

    6.1    Bar Date for Objections to Claims .......................................................12

    6.2    Unclaimed Property ..............................................................................12

6.3     Manner of Payments Under the Plan ................................................................. 13

6.4     Methods of Making Distributions under the Plan ................................................. 13

6.5     Avoidance Power Actions ................................................................................ 14

6.6     Disputed Claims ............................................................................................ 14

6.7     Capital Contribution ...................................................................................... 14

ARTICLE VII - MANAGEMENT OF THE REORGANIZED DEBTOR ................................. 14

7.1     Post Confirmation Officers ............................................................................. 14

7.2     Post Confirmation Board ................................................................................ 15

7.2     Post Confirmation Operations ......................................................................... 15

ARTICLE VIII - EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........................... 15

8.1     Assumption of Executory Contracts and Unexpired Leases .................................. 15

8.2     Cure of Defaults .......................................................................................... 17

8.3     Claims for Damages ...................................................................................... 17

8.4     Classification of Claims .................................................................................. 17

ARTICLE IX - EVENTS OF DEFAULT UNDER PLAN .................................................... 17

9.1     Solicitation of Votes ..................................................................................... 18

9.2     Confirmation Hearing .................................................................................... 18

9.3     Acceptance .................................................................................................. 19

9.4     Fair and Equitable Test; Cramdown ................................................................. 19

9.5     Feasibility and Best Interest Test .................................................................... 20

9.6     Objections to Confirmation ............................................................................ 21

ARTICLE X - ALTERNATIVES TO CONFIRMATION AND
CONSUMMATION OF THE PLAN ............................................................................. 21

10.1    Alternative Plan of Reorganization .................................................................. 21

10.2    Liquidation Under Chapter 7 .......................................................................... 22

ARTICLE XI - TITLE TO PROPERTY DISCHARGE AND TAX CONSEQUENCES ........... 24

11.1    Discharge .................................................................................................... 24

11.2    Vesting Property.................................................................................................24

11.3    Tax Consequences of Confirmation....................................................................25

RECOMMENDATION ................................................................................................26

SIGNATURES...............................................................................................................27

## LIST OF EXHIBITS

**EXHIBIT "A"**    PREFERENCE ANALYSIS

**EXHIBIT "B"**    LIQUIDATION ANALYSIS, UNAUDITED.

**EXHIBIT "C"**    UNAUDITED 6-YEAR PROJECTION OF THE REORGANIZED
DEBTOR.

**EXHIBIT "D"**    BALLOT

# INTRODUCTION

Telebrands Corporation ("Debtor") submits this First Amended Disclosure Statement ("Disclosure Statement") pursuant to the provisions of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., with respect to Debtor's Plan of Reorganization (the "Plan"). All capitalized terms used herein have the meaning ascribed to them in the Plan.

> THE DEBTOR RESERVES THE RIGHT TO FILE AN AMENDED DISCLOSURE STATEMENT AND PLAN. ALL CREDITORS AND INTEREST HOLDERS ARE HEREBY ADVISED AND ENCOURAGED TO READ THE PLAN AND DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

> THE PLAN AND DISCLOSURE STATEMENT ARE NOT REQUIRED TO BE PREPARED IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW. ALL PERSONS SHOULD EVALUATE THE PLAN AND DISCLOSURE STATEMENT IN LIGHT OF THE PURPOSES FOR WHICH IT WAS PREPARED.

> AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED AS AN ADMISSION OR STIPULATION, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

Pursuant to the Bankruptcy Code, only Holders of Claims in Classes 3, 4, 5 and 6 as defined in the Plan are entitled to vote on the Plan. Persons in Classes 1 and 2 are not entitled to vote on the Plan and are deemed to have accepted the Plan because their Claims or Interests are not impaired.

Except as described below, the Plan may be confirmed only if accepted by each voting Class. The Bankruptcy Code defines "acceptance" as acceptance by Holders of (a) at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims and (b) at least two-thirds (2/3) in amount of Allowed Interests in each Class whose Holders cast ballots. Any Voting Class that fails to accept the Plan will be deemed to have rejected the Plan. Section 1129(b) of the Bankruptcy Code permits confirmation of the Plan notwithstanding rejection by one or more

Classes if the Bankruptcy Court finds that the Plan does not discriminate unfairly and is "fair and equitable" with respect to the rejecting Class or Classes ("Cramdown"). For a more detailed description of the requirements for acceptance of the Plan and of the criteria for confirmation notwithstanding rejection by certain Classes see "Confirmation Procedure".

The Debtor may seek to have the Plan confirmed over the rejection of any voting Class which does not accept the Plan, or which is deemed to have rejected the Plan.

THE DEBTOR BELIEVES THAT THE PLAN PROVIDES THE BEST POSSIBLE RECOVERY TO CREDITORS. THE DEBTOR THEREFORE BELIEVES THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF EACH AND EVERY CLASS OF CREDITORS AND INTEREST HOLDERS. THE DEBTOR RECOMMENDS THAT YOU VOTE TO ACCEPT THE PLAN.

THIS DOCUMENT WAS COMPILED FROM INFORMATION OBTAINED BY THE DEBTOR FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE DEBTOR'S KNOWLEDGE, INFORMATION AND BELIEF. HOWEVER, NOTHING CONTAINED HEREIN SHALL BE DEEMED TO BE AN ADMISSION OR A DECLARATION AGAINST INTEREST BY THE DEBTOR FOR PURPOSES OF ANY EXISTING OR FUTURE LITIGATION. TO THE EXTENT THAT CERTAIN DOCUMENTS ARE SUMMARIZED WITHIN THE PLAN, SUCH SUMMARIES ARE QUALIFIED TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS. FURTHERMORE, CERTAIN OF THE FINANCIAL INFORMATION CONTAINED HEREIN HAS BEEN PREPARED BY THE DEBTOR AND ITS ACCOUNTANT WITHOUT AUDIT. EACH HOLDER OF A CLAIM SHOULD REVIEW THE ENTIRE PLAN BEFORE CASTING A BALLOT.

After carefully reviewing the Plan and Disclosure Statement, including the Exhibits, each Person holding a Claim in Classes 3, 4, 5 and 6 should vote by completing the enclosed Ballot and returning the Ballot. If you have a Claim in more than one such Voting Class, you should obtain a separate Ballot for each Claim and vote on each Claim separately.

TO BE COUNTED, YOUR BALLOT MUST BE COMPLETELY FILLED IN, SIGNED AND RECEIVED BY 4:00 P.M. EASTERN STANDARD TIME ON _____, 2000.  **ANY BALLOTS RECEIVED AND SIGNED WHICH DO NOT INDICATE EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN OR WHICH INDICATE BOTH AN ACCEPTANCE AND REJECTION OF THE PLAN WILL BE DEEMED TO CONSTITUTE AN ACCEPTANCE OF THE PLAN.  FACSIMILE BALLOTS WILL NOT BE ACCEPTED.**

Subject to the next sentence, **please return your Ballot(s) to:**

Lowenstein Sandler PC
65 Livingston Avenue
Roseland, New Jersey  07068
Attn.: Sharon L. Levine, Esq.

If you have any questions about the procedure for voting, if you did not receive a Ballot, if you received a damaged Ballot or have lost your Ballot, please call (973) 597-2500, Attn.: Sharon L. Levine, Esq. between 9:00 A.M. and 5:00 P.M. E.S.T.

The Bankruptcy Court has scheduled the Confirmation Hearing for _____, 2000, at _____ E.S.T. before the Honorable Novalyn L. Winfield, United States Bankruptcy Judge, at the United States Bankruptcy Court, 50 Walnut Street, Newark, New Jersey.  Your attendance is welcomed but not required unless you object to Confirmation of the Plan.  The Bankruptcy Court has directed that objections, if any, to confirmation of the Plan be served and filed on or before _____, 2000, at 4:00 p.m. E.S.T., in the manner described under "Objections to Confirmation."  The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for the announcement of the adjourned date made at the Confirmation Hearing or at any subsequent adjourned Confirmation Hearing.

## ARTICLE I - HISTORICAL BACKGROUND

On September 29, 2000, the Debtor commenced a voluntary chapter 11 bankruptcy case. Since then, the Debtor has operated its business and property as a debtor-in-possession.

The Debtor is engaged in the business of developing, manufacturing, marketing and distributing consumer products through direct response media, catalogs and retail outlets. As of the Petition Date, the Debtor employed 38 employees.    In May of 1983, at the age of 23, Ajit Kubani started a mail order company called The Direct Connection which eventually became the Debtor, Telebrands Corp.  The Debtor was capitalized with less than $20,000 which consisted of Mr. Kubani's entire personal life savings.  It was started from a single desk in a shared office with one phone line, a used typewriter, and one employee, Mr. Kubani, who was paid $150 per week for 70-90 hours of work.  The first business the Debtor conducted was the running of a mail order ad for an AM/FM radio at a retail price of $9.95 in the National Enquirer weekly newspaper.  The Debtor wrote the ad itself, and placed it at a cost of $7,500 (almost 40% of the entire company's capital). The ad pulled roughly 1,000 orders which Mr. Khubani fulfilled after hours and on weekends.

The company continued to run mail order ads as its exclusive source of revenue for the first four years for a wide variety of products ranging from electronics to tools, footwear, and collectibles. Revenues grew from $83,000 in 1983 to nearly $11 million in 1986.  Funding for this growth came exclusively from trade credit and profits. The Debtor expanded from mail order ads to television ads in 1987.  The first product the Debtor launched on television was Ambervision sunglasses which quickly became a huge success.

In 1987, the Debtor expanded its facilities by renting a 2,500 sq. ft. office space in Wayne, NJ and by purchasing a 31,000 sq. ft. warehouse in Roanoke, VA.  In 1989, the Debtor sold its Ambervision sunglasses to Herman's Sporting Goods where they were a big hit.  This is when the Debtor discovered that products sold via direct response television ads also sell extremely well through retail chains.  By 1990, the Debtor started aggressively selling its mail order products to other retail chains such as Jamesway, Boscovs, and Caldor.  Wholesale sales accounted for nearly 20% of the Debtor's sales in 1990.

The Debtor continued to follow and refine this successful marketing model of launching products via direct response television and then selling them to retail chains.  It grew primarily by expanding its retail distribution and expanding its sales internationally. In 1992, the Debtor began

to factor its accounts receivable with Century Business Credit to improve its cash flow. In 1993, the Debtor moved its sales and marketing facilities to the Debtor's current location in Fairfield, NJ. In 1995, the Debtor moved its warehouse from Roanoke, VA to a 200,000 sq. ft. facility in nearby Salem, VA. By 1995 sales were approaching $150 million with a variety of widely recognized consumer products such as the Miracle Thaw defrosting tray, the Smart Mop, and the Abflex. The Debtor had over 150 employees by that time. This was the height of the Debtor's sales and success.

In 1996, the Debtor began to suffer setbacks. First, the Debtor's two best selling products at the time, the Abflex and the EZ Krunch met with a hugely successful competitive product known as the Ab Roller. The competition quickly eroded the Debtor's sales leaving the Debtor with a big dilution of its accounts receivable and a large inventory position. Second, the Debtor's was enjoined by a federal judge in Cleveland from selling its next best seller for the year, a product known as Easy Money, just as it was beginning to ship for the Christmas season. As a result of these major setbacks the Debtor suffered losses in 1986.

The Debtor managed to survive by launching some very big hits almost immediately. In 1997, the Debtor launched the Safety Can Can-Opener, the Oriental Buckwheat Pillow, and the Static Duster and hit sales of $125 million. In 1998, the Debtor launched the Audubon Bird Clock and the Onion Machine and reached revenues of $140 million. It appeared that the Debtor was back on track, but because of the Debtor was continuing to attempt to catch up from prior losses, the Debtor, under the pressure for big hit products, took greater financial risks than it took historically.

As a result of running at this higher risk rate, the Debtor stumbled hard in 1999 losing over $14 million. But, at the very end of 1999, the Debtor test marketed a product that appeared to be the Debtor's savior. This product was the First Quarters Map. Indeed, the market tests and the Debtor's subsequent television campaign proved the product to be the best seller in the Debtor's seventeen (17) year history. Initial sales at retail stores in March 2000 were remarkable. However, in hindsight, the Debtor was too aggressive with its overall sales projections and ended up with over 6 million maps that it could not sell quickly enough to pay its bills. This mistake, coupled with

some other ensuing problem brought about by a lack of cash, forced the Debtor into the unfortunate position that it is in today.

The Debtor's chapter 11 filing is the result of a liquidity crisis brought about by significantly weaker than expected operating results. The liquidity crisis has caused serious concerns about the Debtor's ability to fulfill its obligations to vendors and customers and to develop and market new products to generate cash flow to satisfy existing debt obligations.

During the course of the Debtor's bankruptcy case, the Debtor has been utilizing financing and the asserted cash collateral of Rosenthal, Azad and Bax to operate its business pursuant to a consensual financing and cash collateral arrangement.

## ARTICLE II - CLASSIFICATION OF CLAIMS AND INTERESTS

All Claims and all Interests, as defined herein and in Section 101(5) of the Bankruptcy Code against the Debtor, of whatever kind or nature, whether or not scheduled or liquidated, absolute or contingent, whether resulting in an Allowed Claim or not, shall be bound by the provisions of the Plan and are hereby classified as follows.

2.1    **Classification of Claims.**    Section 2.2 sets forth the designation of Classes of Claims. A Claim is classified in a particular Class for voting and distribution purposes only to the extent that the Claim qualifies within the description of the Class and is classified in a different Class or Classes to the extent any remainder of the Claim qualifies within the description of that different Class or Classes. Unless otherwise provided, to the extent a Claim qualifies for inclusion in a more specifically-defined Class and a more generally-defined Class, it shall be included in the more specifically-defined Class.

2.2    **Classes.**    For purposes of this Plan, those Persons holding Claims and Interests against the Debtor are grouped in accordance with Section 1122(a) of the Bankruptcy Code.

A.    Class 1: Allowed Priority Claims. This Class consists of all Allowed Priority Claims other than Claims of taxing authorities entitled to priority under Bankruptcy Code §507(a)(1) or (7).

B.    Class 2: Consists of the Claims of Rosenthal.

C.  Class 3: Consists of the Claims of Azad.

D.  Class 4: Consists of the Claims of Bax.

E.  Class 5: Consists of Unsecured Claims.

F.  Class 6: Consists of Equity Interests.

## ARTICLE III - TREATMENT OF ADMINISTRATIVE AND TAX CLAIMS

3.1   **Administrative Claims.**

A.  Administrative Claims. All costs or expenses of administration related to the Debtor's bankruptcy case from the commencement of the bankruptcy case, which include, without limitation, fees and expenses of all attorneys, accountants, appraisers, consultants, and all other professionals retained by the Debtor, all post-petition claims, expenses and payables, and all other administration expenses, shall be paid by the Reorganized Debtor (i) in cash on the Effective Date, or (ii) within ten (10) days after an Order of the Bankruptcy Court approving and allowing the appropriate fee applications becomes a Final Order unless such Holder shall agree to different treatment of its Claim; provided, however, that Administrative Claims representing obligations incurred in the ordinary course of the Debtor's businesses shall be paid or performed in accordance with the terms of such agreement(s) relating thereto. No interest shall be paid on any Administrative Claim unless expressly allowed by a Final Order of the Bankruptcy Court.

B.  Applications for Professional Fees. All applications for professional fees for services rendered and reimbursement of expenses in connection with the Reorganization Case prior to the Effective Date are Administrative Claims and shall be filed with the Bankruptcy Court within forty-five (45) days after the Effective Date. Any application not filed within forty-five (45) days after the Effective Date shall be barred from receiving payment on account thereof. The Reorganized Debtor shall promptly pay or cause payment of professional fees for services rendered prior to the Confirmation Date in accordance with paragraph 3.1(A) above on the Effective Date or, if an application is pending on or filed after the Effective Date, when allowed by a Final Order of the Bankruptcy Court. Professional fees of the Reorganized Debtor for services rendered in connection with the Reorganization Case after the Confirmation Date, including those relating to

the resolution of Disputed Claims, and all expenses of the Disbursing Agent, shall be paid by or caused to be paid by the Reorganized Debtor upon the submission of invoices without the requirement of Bankruptcy Court approval. Any objection(s) thereto not amicably resolved shall be adjudicated by the Bankruptcy Court.

3.2     **Tax Claims.** All Allowed Tax Claims shall be paid by the Reorganized Debtor over a period of six years from the date of assessment thereof or the Effective Date, whichever is later, in equal consecutive quarterly payments commencing on the Effective Date pursuant to Bankruptcy Code §1129(a)(9). Said Tax Claims may be prepaid at any time without penalty. Interest on Allowed Tax Claims shall be paid at the rate of 8.25% per annum.

To the extent that any federal, state or municipal taxing authorities asserts a claim for taxes owed as a result of transfers made pursuant to the Plan, any such Allowed Tax Claim shall be paid by the Debtor over six years in equal consecutive quarterly payments commencing on the later of the Effective Date or the date as which an Order allowing such claim(s) becomes a Final Order.

## ARTICLE IV - TREATMENT OF CLASSES UNDER THE PLAN

4.1     **Satisfaction of Claims.** The treatment of and consideration to be received by Holders of Allowed Claims pursuant to this Article IV of the Plan shall be in full satisfaction, release and discharge of their respective Claims against the Debtor.

4.2     **Class 1: Allowed Priority Claims.** Each Holder of an Allowed Priority Claim shall receive 100% of the Allowed amount of such Claim in Cash on the later of the date on which such Allowed Priority Claim is due and payable or in accordance with the terms of its written agreement with the Debtor.

4.3     **Class 2: Claim of Rosenthal.** Rosenthal's Claim shall be satisfied as follows:

A.     The payment of the Claim and the provision and satisfaction of any additional financial accommodations by Rosenthal shall be consistent with the terms of the Factoring Agreement dated April 6, 2000, Security Agreement and Mortgage, as amended from time to time.

B.     Rosenthal shall retain its current lien on the Debtor's assets.

C.     Upon payment in full of the Claim and all other accommodations provided by Rosenthal to the Reorganized Debtor, and subject to the terms of any agreements between the Debtor and Rosenthal which shall control, Rosenthal shall execute all documents reasonably necessary to release liens, claims and impairments on all collateral, including UCC-3 Termination Statements, discharges of mortgages and releases for filing with the appropriate authorities.

D.     Subject to the terms of any agreements between the Debtor and Rosenthal which shall control, so long as there is no default by the Debtor in the payment terms, from the Confirmation Date through the Effective Date, the Debtor is authorized to factor accounts receivable and use cash collateral in accordance with the most recent order authorizing the Debtor to factor accounts receivable with Rosenthal and for related relief, if in effect, and in accordance with all of the terms of the agreements between the parties which shall control. If such an order shall not be in effect at the Confirmation Date, to the extent not inconsistent with any order issued by the Bankruptcy Court prior to the Confirmation Date, the Bankruptcy Court shall authorize the Debtors to factor accounts receivable and use cash collateral to the Effective Date.

E.     In Rosenthal's discretion, all amounts due as of the Confirmation Date shall be immediately paid in full in cash.

4.4     **Class 3: Claim of Azad.** Azad's Claim shall be satisfied as follows:

A.     The payment of the Claim and the provision and satisfaction of any additional financial accommodations by Azad including, without limitation, the provision of a line of credit with availability of up to $5,000,000 shall be consistent with the terms of the existing loan documents as amended from time to time. Azad shall make a line of credit available to the Debtor of up to $5,000,000 inclusive of its existing debt and Claim. The reorganized Debtor shall and has remained current on the debt service for all post petition obligations.

B.     Azad shall retain its current lien on the Debtor's assets.

C.    So long as there is no default by the Debtor in the payment terms, from the Confirmation Date through the Effective Date, the Debtor is authorized to use financing and use cash collateral in accordance with the most recent order authorizing the Debtor to obtain financing from Azad and for related relief, if in effect. If such an order shall not be in effect at the Confirmation Date, to the extent not inconsistent with any order issued by the Bankruptcy Court prior to the Confirmation Date, the Bankruptcy Court shall authorize the Debtor to borrow funds from Azad and use cash collateral to the Effective Date.

D.    Upon payment in full of the Claim and all other accommodations provided by Rosenthal to the Reorganized Debtor, Azad shall execute UCC-3 Termination Statements for filing with the appropriate authorities.

Currently, the balance due to Azad is about $1,500,000.

4.5    **Class 4:  Claims of Bax.**  The Claims of Bax shall be satisfied as follows.

A.    With respect to the secured portion of the Claim, if any, Bax shall retain the liens securing such Claim having a present value equal to the value of Bax's collateral with the same validity and priority enjoyed prior to and during the Reorganization Case, and shall receive deferred cash payments in equal monthly installments of principal and interest at 8% per annum totaling the Allowed amount of Bax's Secured Claim amortized over 30 years with a balloon payment due on the seventh annual anniversary of the Initial Distribution Date. The Allowed amount of the Bax Secured Claim shall be either agreed upon by the Debtor and Bax or, in the event the Debtor and Bax do not agree on the Allowed amount of the Bax Secured Claim, the Allowed amount of the Bax Secured Claim shall be decided by the Bankruptcy Court at or before the Confirmation Hearing.

B.    The Allowed amount of Bax Unsecured deficiency Claim, if any, shall be treated as a Class 5 Unsecured Claim.

Currently, the balance due to Bax is about $4,500,000.00.

4.6    **Class 5:  Unsecured Claims.**  The Holders of Allowed Unsecured Claims shall receive their pro rata share of 1% of the Reorganized Debtor's Net Sales up to $60 million per

annum and 1 1/2% of Net Ssales over $60 million per annum for calendar years 2001, 2002, 2003, 2004, 2005 and 2006. The Debtor estimates that unsecured creditors will receive a distribution of about 28%, but cautions creditors that the distribution could be less or zero if the Debtor does not meet projections or successfully reduce the aggregate amount of filed proofs of claim to the amounts reflected in the debtor's books. The distribution to Holders of Allowed Class 5 Claims could also be higher based upon the outcome of avoidance power actions to be pursued by the Committee. See Section 6.5.

The Court has fixed November 30, 2000 as the last date for filing proofs of claim. The Debtor and the Committee reserve the right to object to all proofs of claim which are not timely filed or which assert claims which are inconsistent with the statements and schedules filed by the Debtor.

4.7    **Class 6: Equity Interests.** The Debtor's shareholder shall retain his Interest in the Debtor unaffected by the Plan. Ajit Khubani owns 100% of the Debtor's common stock and there is only one class of stock.

4.8    **Full and Final Satisfaction.** All payments and all distributions hereunder shall be in complete and full and final satisfaction, settlement, release and discharge of all Claims of any kind or nature whatsoever known or unknown, from the beginning of time through the Confirmation Date against the Debtor.

4.9    **Fractional Cents.** Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent (rounding down in the case of .5).

4.10    **De Minimis Payments.** No payment shall be required to be made to the Holder of a Claim under this Plan unless the amount of the payment is at least $25.00. Unpaid de minimus payments to holders of Class 5 Claims shall not revest in the Debtor, but shall be reallocated for payment to Holders of Allowed Class 5 Claims.

## ARTICLE V - CLASSES OF CLAIMS AND
## INTERESTS IMPAIRED AND ENTITLED TO VOTE

5.1     **Impairment.**  In the event of any issue or controversy regarding whether a Claim or Interest is impaired or unimpaired, the Bankruptcy Court shall determine whether the Allowed Claim, Allowed Interest, Class of Allowed Claims or Class of Allowed Interest is impaired or is unimpaired.

5.2     **Unimpaired Classes.**  Allowed Claims in Classes 1, and 2 are not impaired under the provisions of the Plan.  The Debtor is not soliciting acceptances from Holders in these Classes because, under Section 1126(f) of the Bankruptcy Code, Claims and Interests in these Classes are conclusively presumed to have accepted the Plan.

5.3     **Impaired Classes.**  Allowed Claims in Classes 3, 4, 5 and 6 are impaired under the provisions of the Plan.  The Debtor is soliciting acceptances and/or rejections from the Holders of Allowed Claims and Interests in these Classes.

## ARTICLE VI - MEANS FOR IMPLEMENTATION OF THE PLAN

6.1     **Bar Date for Objections to Claims.**  Unless an earlier or later time is set by Order of the Bankruptcy Court, all objections to Claims shall be filed by the later of sixty (60) days after the Confirmation Date or sixty (60) days after a particular proof of claim is filed for proofs of claim filed after the Confirmation Date.

6.2     **Unclaimed Property.**  Any Cash, including interest earned thereon (if any), that is unclaimed for a period of ninety (90) days after distribution thereof by mail to the latest known mailing address Filed by or for the Person entitled thereto (or to the last mailing address maintained in the records of the Debtor) shall revest in the Reorganized Debtor, except that unclaimed distributions made to Holders of Class 5 Claims shall not revest in the Reorganized Debtor, but shall be reallocated by the Disbursing Agent for pro-rata distribution among Holders of Allowed Class 5 Claims.

6.3     **Manner of Payments Under the Plan.** At the option of the Disbursing Agent, any Cash payment to be made pursuant to the Plan may be made by check or wire transfer or as otherwise required or provided for in any applicable agreement.

6.4     **Methods of Making Distributions Under the Plan.**

A.     **Cash Distributions to Holders of Allowed Claims.** The Reorganized Debtor shall be the Disbursing Agent for distributions to Holders of all Classes of Claims other than Class 5. Ravin, Greenberg & Marks, PA, counsel to the Committee, shall be the Disbursing Agent for all distributions to Holders of Class 5 Claims. The Disbursing Agents shall make all distributions under the Plan.

B.     **Distribution to Holders of Class 5 Claims.** The Debtor shall calculate the distribution due to Holders of Class Five Claims on a semi-annual basis and shall remit a distribution report and sufficient cash to make the proposed distributions to the Disbursing Agent by not later than ninety (90) days after the end of each six-month period. Wiss & Company, the Committee's accountant, shall have reasonable access to the Debtor's premises and personnel during normal working hours to verify the Debtor's calculation and distribution report at the Disbursing Agent's sole cost and expense. The Disbursing Agent shall hold the sums forwarded to it in an interest bearing account and shall apply the same to pay costs and expenses of the Disbursing Agent and to make distributions to Holders of Allowed Class 5 Claims.

C.     **Compliance with Tax Requirements.** In connection with the Plan, to the extent applicable, the Disbursing Agents in making distributions under the Plan shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. The Disbursing Agents may withhold the entire distribution due to any Holder of an Allowed Claim until such time as such Holder provides to the Disbursing Agents the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Disbursing Agents to the appropriate authority. If the Holder of an allowed Claim fails to provide to the Disbursing Agents the information necessary to comply with any

withholding requirements of any governmental unit within six months from the date of first notification by the Disbursing Agents to the Holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the Holder's distribution shall be treated as an undeliverable Distribution in accordance with Section 6.2 of the Plan.

6.5    **Avoidance Power Actions.**    Except as otherwise provided in the Plan, on the Confirmation Date, any rights or causes of action arising under Sections 544 through 550 and 553 of the Bankruptcy Code shall be transferred to and vested in the Committee. The Committee shall have standing to pursue all such actions on behalf of and for the benefit of Holders of Class 5 Claims. A preference analysis is attached to the Disclosure Statement as Exhibit A.

6.6    **Disputed Claims.**    There shall be reserved from any distribution the amount of the distribution which would be paid in respect of a Disputed Claim if it were deemed to be an Allowed Claim, or such lesser amount as the Bankruptcy Court may determine. After the Disputed Claim(s) have been resolved by a Final Order of the Bankruptcy Court, all sums due and owing on account of the Allowed Claim(s) shall promptly be disbursed by the Disbursing Agent.

6.7    **Capital Contribution.**    The Debtor's shareholder shall contribute $1,000,000 in funds to the Reorganized Debtor on or before the Effective Date. In the shareholder's sole discretion, the funds may be contributed as loans, repayments of loans, capital contributions or otherwise. The payment of the contribution shall be considered additional consideration for the releases provided for in Section 13.21 of the Plan.

## ARTICLE VII - MANAGEMENT OF THE REORGANIZED DEBTOR

7.1    **Post Confirmation Officers.**    Ajit Khubani will be the Debtor's post-Confirmation Chief Executive Officer. It is anticipated that, as of the Effective Date, the officers of the Reorganized Debtor will be as follows:

| NAME | TITLE |
|------|-------|
| Ajit Khubani | Chief Executive Officer |

7.2   **Post Confirmation Board.**  As of the Effective Date, the Reorganized Debtor shall be governed by a three member board of directors, consisting of Ajit Khubani, a member of the Committee and an independent person who is neither an Insider, Creditor, nor other party in interest in the Reorganization Case.  The Reorganized Debtor shall maintain director and officer insurance with reasonable coverage limits for a business of its size.

7.3   **Post Confirmation Operations.**  The Reorganized Debtor shall operate its business and property in accordance with all applicable law and in a manner designed to maximize the value of the Debtor's assets.  The by-laws of the Post Confirmation Debtor shall be amended to require approval by majority vote of the Board of Directors of any license agreement between the Reorganized Debtor and any third party.

## ARTICLE VIII - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.1   **Assumption of Executory Contracts and Unexpired Leases.**  The Debtor shall assume the following Executory Contracts effective upon the entry of the Confirmation Order:

| Non-Debtor Party | Description | Cure Amount |
|---|---|---|
| MINOLTA MI 0983 ONE INTERNATIONAL BLVD 10TH FL MAHWAH, NJ 07430-0631 | PHOTOCOPY EQUIPMENT LEASE #4489153 LEASE #4489154 | $0.00 |
| LUCENT RM 5616 5 WOODHOLLOW ROAD 2ND FLPARSIPPANY, NJ 07054 | E900129 61 MONTH - DEFINITY G351 48 MONTH - INTUITY WITH SYSTEM | $0.00 |
| MERCEDES ME 4090 P.O. BOX 530052 ATLANTIC, GA 30353 | 2000 MERCEDES | $0.00 |
| WORLD OMNI FINANCIAL P.O. BOX 96014 CHARLOTTE, NC 28206 | 1998 MERCEDES 500 | $0.00 |
| | | $0.00 |

XEROX ZX0001                          4050 PRINTER
P.O. BOX 827598
PHILADELPHIA, PA 19182

                                                                              $0.00
COPELCO CC0528                       MINOLTA FAX
ONE INTERNATIONAL BLVD
MAHWAH, NJ 07430-0631

                                                                              $0.00
CHRYSLER FIN CH5487                  1999 DODGE CARAVAN
580 WHITE PLAINS RD
TARRYTOWN, NY 10591

                                                                              $0.00
PITNEY BOWES ZP0001                  2560852 - PARAGON EQUIPMENT
P.O. BOX 85460                       7456114 - DICTATION EQUIPMENT
LOUISVILLE, KY 40285-5460            0625576 - MAIL MACHINE

                                                                              $0.00
FILTERFRESH FI5646                   WATER COOLER RENTAL
204 COLUMBUS AVE

ROSELLE, NJ 07203                                                             $0.00

                                     10810000 - GENERAL CLEANING
UNITY BUILDERS
379 FIFTH AVE, 2ND FL.
NEW YORK, NY 10016                                                            $0.00

                                     EXCLUSIVE LICENSE AGREEMENT
THINK TEK                            BOOGIE BASS, US AB FORCE & 1ST
120 LITTLETON ROAD                   COIN MAP
PARSIPPANY, NJ 07054
                                                                              $0.00
IBS                                  LEASE TO 2ND FLOOR
79 TWO BRIDGES ROAD
FAIRFIELD, NJ 07004
                                                                              $0.00
CSJ LLC                              LEASE FOR OFFICE SPACE
81 TWO BRIDGES ROAD
FAIRFIELD, NJ 07004


Any Executory Contracts not assumed by Confirmation shall be deemed rejected and disaffirmed as

of the Confirmation Date, unless previously assumed and/or rejected pursuant to a prior order of the

Bankruptcy Court.

8.2    **Cure of Defaults.**  As to any Executory Contracts Leases assumed pursuant to this Article VIII, the Reorganized Debtor shall, pursuant to the provisions of Bankruptcy Code §1123(a)(5)(G), cure all defaults existing under and pursuant to such Executory Contract or Unexpired Lease by paying the cure amount, if any, listed above or as fixed by Order of the Bankruptcy Court at or before the Confirmation Hearing.  Payment of such cure amount shall be in full settlement, satisfaction, release, discharge and cure of all such defaults (including any other Claims filed by any such party as a result of such defaults) under the Executory Contract or Unexpired Lease, unless the Bankruptcy Court shall determine the amount due and owing in respect of the defaults is different from any Claims.  Payment of such Claims shall be made by the Reorganized Debtor on the Initial Distribution Date.  If no cure amount is listed, none is due.

8.3    **Claims for Damages.**  Each Person who was a party to an Executory Contract which is rejected pursuant to this Article VIII shall be entitled to file, not later than thirty (30) days after such rejection by a Final Order, a proof of claim for damages alleged to have arisen from the rejection of the Executory Contract to which such Person is a party.  Objections to any proofs of claim shall be filed by the Debtor by not later than sixty (60) days after such proof of claim is filed. In the event that an objection if filed, the Bankruptcy Court shall determine the amount due and owing to the Person that filed the proof of claim.  Distribution(s) and payment(s) on account of such Claims consistent with the distribution(s) and payment(s) received or to be received by Holders of other Claims in the Classes into which such Claims are identified, as determined by this Section 8.3 of this Article VIII, shall be made on the later of (i) ten (10) Business Days after the expiration of the sixty (60) day period for filing an objection in respect of any proof of claim filed pursuant to this Section 8.2, or (ii) ten (10) Business Days after the Claim has been Allowed by a Final Order provided that no such payment shall be made before the Initial Distribution Date.

8.4    **Classification of Claims.**   Allowed Claims arising from the rejection of an Executory Contracts and/or an Unexpired Lease shall be treated in Class 5 of the Plan.

## ARTICLE IX - EVENTS OF DEFAULT UNDER THE PLAN

The following shall constitute events of default under the Plan:

The Reorganized Debtor shall fail to make any payment when due as required under this Plan and (i) written notice of the default is provided to the Reorganized Debtor, and (ii) fifteen (15) days have elapsed without the payment having been made. Creditors' rights and remedies upon default shall be governed by the Bankruptcy Code and, if applicable, New Jersey law.

A default in payment as to a particular Class under the Plan shall not constitute a default under the entire Plan, but only as to the Holders of Allowed Claims in the particular Class to which an event of default has occurred.

### 9.1    Solicitation of Votes.

Any Holder in any of the voting Classes is entitled to vote if either (i) such Holder's Claim has been scheduled by the Debtor in the schedules filed with the Bankruptcy Court (provided that such Claim has not been scheduled as disputed, contingent or unliquidated), or (ii) such Holder has filed a proof of claim on or before the Bar Date (or, if not filed by such date, any proof of claim Filed out of time with the permission of the Bankruptcy Court), unless such Claim has been disallowed for voting purposes by the Bankruptcy Court. A vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that an acceptance or rejection was not solicited or procured or made in good faith or in accordance the provisions of the Bankruptcy Code.

### 9.2    Confirmation Hearing.

The Bankruptcy Code requires the Bankruptcy Court to hold a hearing on confirmation of the Plan after the ballots have been cast. The Confirmation Hearing has been scheduled for _____, 2000, at 10:00 a.m. (E.S.T.). The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjournment made at the Confirmation Hearing. At the Confirmation Hearing, the Bankruptcy Court will (i) determine whether the Plan has been accepted by the requisite majorities of each Voting Class; (ii) hear and determine all objections to the Plan and to confirmation of the Plan; (iii) determine whether the Plan meets the requirements of the Bankruptcy Code and has been proposed in good faith; and (iv) confirm or refuse to confirm the Plan.

### 9.3    Acceptance.

Each of the Voting Classes will be deemed to have accepted the Plan if the Plan is accepted by at least two-thirds in dollar amount and more than one-half in number of the Claims of such Class (excluding certain Claims designated under Section 1126(e) of the Bankruptcy Code) and two-thirds in amount of Allowed Interests that have voted to accept or reject the Plan.

### 9.4    Fair and Equitable Test; Cramdown.

Any voting Class that fails to accept the Plan will be deemed to have rejected the Plan. Notwithstanding such rejection, the Bankruptcy Court may confirm the Plan and the Plan will be binding upon all Classes, including the Classes rejecting the Plan, if the Debtor demonstrates to the Bankruptcy Court that at least one impaired Class of Claims has accepted the Plan and that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to each non-accepting Class. A plan does not discriminate unfairly if the legal rights of a dissenting Class are treated in a manner consistent with the treatment of other Classes whose legal rights are similar to those of the dissenting Class and if no Class receives more than it is entitled to on account of its Claims.

The Bankruptcy Code establishes different "fair and equitable" tests for Secured and Unsecured Creditors as follows:

A.    **Secured Creditors.** Either (i) each Secured Creditor in a non-accepting impaired Class retains the liens securing its Secured Claim and receives on account of its Secured Claim deferred Cash payments having a present value equal to the amount of its Allowed Secured Claim, (ii) each Secured Creditor in a non-accepting impaired Class realizes the indubitable equivalent of its Allowed Secured Claim, or (iii) the property securing the Claim is sold free and clear of liens with such liens to attach to the proceeds of sale and the treatment of such liens on proceeds as provided in clauses (i) and (ii) of this subparagraph.

B.    **Unsecured Creditors.** Either (i) each Unsecured Creditor in a non-accepting impaired Class receives or retains under the Plan property having a present value equal to

the amount of its Allowed Claim, or (ii) the Holders of Claims and Interests that are junior to the Claims of the dissenting Class will not receive or retain any property under the Plan.

THE DEBTOR BELIEVES THAT THE PLAN DOES NOT DISCRIMINATE UNFAIRLY WITH RESPECT TO ANY CLASS, AND THAT IT IS FAIR AND EQUITABLE WITH RESPECT TO EACH IMPAIRED CLASS.   THEREFORE, THE DEBTOR WILL SEEK CONFIRMATION OF THE PLAN EVEN IF LESS THAN THE REQUISITE NUMBER OF FAVORABLE VOTES ARE OBTAINED FROM ANY VOTING CLASS.   THE DEBTOR RECOMMENDS THAT ALL CREDITORS AND INTEREST HOLDERS VOTE TO ACCEPT THE PLAN.

     9.5    Feasibility and Best Interest Tests.

The Bankruptcy Code requires that in order to confirm the Plan the Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization of the Debtor (the "Feasibility Test"). For the Plan to meet the Feasibility Test, the Bankruptcy Court must find that the Reorganized Debtor will possess the resources and working capital necessary to operate profitably and will be able to meet its obligations under the Plan. In addition, the Bankruptcy Court must determine that the values of the distributions to be made under the Plan to each Class will equal or exceed the values which would be allocated to such Class in a liquidation under Chapter 7 of the Bankruptcy Code (the "Best Interest Test"). The Best Interest Test with respect to each impaired Class requires that each Holder of a Claim or Interest in such Class either (i) accept the Plan or (ii) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such Holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code.

The Debtor believes that the Plan meets the requirements of the Feasibility Test and of the Best Interest Test by providing Cash distributions at Confirmation and in accordance with the payment schedules set forth in the Plan on account of Allowed Unsecured Claims.

9.6     Objections to Confirmation.

Objections to confirmation must be in writing and specify in detail the name and address of the objector, all grounds for the objection and the amount of the Claim or the Interest in the Debtor held by the objector. Any such objection must be filed with the Bankruptcy Court and served upon each of the following so that it is received by them on or before 4:00 P.M. on _____, 2000:

> Lowenstein Sandler, PC
> 65 Livingston Avenue
> Roseland, New Jersey 07068
> Attention: Jeffrey D. Prol, Esq.
>
> Office of United States Trustee
> One Newark Center
> Suite 2100
> Newark, New Jersey 07102
>
> Ravin, Greenberg & Marks, PA
> 101 Eisenhower Parkway
> Roseland, New Jersey 07068
> Attention: Howard S. Greenberg, Esq.

Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

## ARTICLE X - ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

If the Plan is not confirmed and consummated the alternatives include: (i) preparation and presentation of an alternative plan of reorganization; or (ii) liquidation of the Debtor under Chapter 7 or Chapter 11 of the Bankruptcy Code.

10.1    Alternative Plans of Reorganization.

The Debtor believes that failure to confirm the Plan will inevitably lead to expensive and protracted litigation and may eventually lead to the liquidation of the Debtor, in which case no money may be available for any creditors other than its secured creditors. In formulating and developing the Plan, the Debtor has explored numerous alternatives. The Debtor believes not only

that the Plan, as described herein, fairly adjusts the rights of various Classes of Creditors and enables the Creditors to realize the most possible under the circumstances, but also that rejection of this Plan in favor of some theoretical alternative method of reconciling the Claims of the various Classes will require, at the very least, an extensive and time-consuming negotiation process and will not result in a better recovery for any Class. It is not atypical for bankruptcy proceedings to continue for periods of years before a plan of reorganization is consummated and payments are made.

During any protracted reorganization, the Debtor would inevitably incur substantial administrative expenses and costs pursuant to the operation of its business under Chapter 11 of the Bankruptcy Code.

Further, if a trustee was not appointed, since one is not required in a Chapter 11 case, the expenses for professional fees would most likely be lower than in a Chapter 7 case. To the extent that an increased recovery may result from an extended liquidation under Chapter 11, however, such an increase may well be offset by significant decreases in value of the Debtor's assets at a liquidation sale and the continued accrual of interest on allowed secured claims.

### 10.2    Liquidation Under Chapter 7.

The Debtor believes that a liquidation under Chapter 7 would result in substantially reduced recovery of funds by the Debtor's estate because of (i) additional administrative expenses involved in the appointment of a trustee for the Debtor and attorneys and other professionals to assist such trustee, (ii) additional expenses and claims, some of which would be entitled to priority, which would be generated during the liquidation and from the rejection of leases and other executory contracts in connection with a cessation of the Debtor's operations, and (iii) forced sale of the Debtor's Assets. Accordingly, the Debtor believes that if Holders of Claims could or would receive anything in a Chapter 7 liquidation, such Holders of Claims and Interests may be expected to receive substantially smaller distributions pursuant to a Chapter 7 liquidation than under the Plan.

To determine what Holders of Claims and Interests in each impaired Class would receive if the Debtor were liquidated, the Bankruptcy Court must determine what funds could be generated

from the liquidation of the Debtor's assets and property in the context of a Chapter 7 liquidation case, which would consist of the proceeds resulting from the disposition of the unencumbered assets of the Debtor, augmented by the Cash held by the Debtor at the time of the commencement of the liquidation case. Such Cash amounts would be reduced by post-petition Chapter 11 administrative costs, costs and expenses of the liquidation and by such additional administrative and Priority Claims as may result from the termination of the Debtor's operations and the use of Chapter 7 for the purposes of liquidation. To determine if the Plan is in the best interest of each impaired Class, the present value of the distributions from the proceeds of the liquidation of the Debtor's assets and property (after subtracting the amounts attributable to the aforesaid Claims) are then compared with the present value offered to such Classes of Claims under the Plan.

In applying the Best Interest Test, it is likely that Claims in the Chapter 7 case may not be classified according to the seniority of such Claims as provided in the Plan. In the absence of a contrary determination by the Bankruptcy Court, all pre-Chapter 11 general unsecured creditor Claims that have the same rights upon liquidation would be treated as one Class for the purposes of determining the potential distribution of the liquidation proceeds resulting from the Chapter 7 case of the Debtor. The distributions from the liquidation proceeds would be calculated ratably according to the amount of the aggregate Claims held by each Creditor. The Debtor believes that the most likely outcome of liquidation proceedings under Chapter 7 would be the application of the rule of absolute priority of distributions. Under that rule, no junior Creditor may receive any distribution until all senior Creditors are paid in full with interest.

Generally, the Debtor believes that the value of any distribution from a liquidation to a Holder of an Allowed Claims in a Chapter 7 case would be less than the value of distributions under the Plan because (i) the claims of secured creditors exceed the liquidation value of the Debtor's assets; (ii) in a Chapter 7, Ajit Khubani would not inject $1,000,000.00 to recapitalize the Debtor and Azad would not extend additional credit; and (iii) in a Chapter 7, the Debtor would not be able to dedicate a percentage of gross sales for a period of six (6) years to fund a dividend to unsecured creditors.

A copy of the Debtor's unaudited liquidation analysis is attached as **EXHIBIT "B"**. This analysis is based on Debtor's estimated inventory, estimated collectability of accounts receivable, liquidation value of certain assets and estimates of professional fees.

A copy of the Reorganized Debtor's 6-year projection is attached as **EXHIBIT "C"**. These projections are based on the Debtor's historical financial performance and were prepared by the Debtor's management.

## ARTICLE XI - TITLE TO PROPERTY,
## DISCHARGE AND TAX CONSEQUENCES

**11.1    Discharge.**  Except as otherwise provided by the Plan or in the Confirmation Order, Confirmation shall operate as a discharge, pursuant to Bankruptcy Code Section 1141(d)(1) effective as of the Confirmation Date, of any and all debts or Claims against the Debtor and Reorganized Debtor, known or unknown, whether accrued before, on, or up to and including the Confirmation Date.  On the Confirmation Date, as to every discharged debt or Claim, the Creditor that held such debt or Claim shall be precluded from asserting against the Reorganized Debtor or against the Reorganized Debtor's Assets or properties, any other or further Claim based upon any document, instrument, act, omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date.  Without limiting the generality of the foregoing, upon the payment or deposit by the Reorganized Debtor of all amounts due to be paid on the Initial Distribution Date pursuant to the provisions of the Plan, and upon delivery of the various documents provided for by the Plan, the Debtor shall be discharged from any debt that arose before the Confirmation Date and any debt of any kind specified in §§ 502(g), 502(h) or 502(i) of the Bankruptcy Code, to the full extent permitted by Section 1141(d) of the Bankruptcy Code.

**11.2    Vesting of Property.**  Except as otherwise provided in this Plan or the Confirmation Order, upon Confirmation all Assets of the Debtor's Estate, wherever situated, shall vest in the Reorganized Debtor or its designees and shall be free and clear of all liens, security interests and

-24-

Claims of Creditors, except obligations pursuant to the Plan and Confirmation Order and the liens and security interests, if any, granted or maintained pursuant to the Plan.

**11.3    Tax Consequences of Confirmation.**    Confirmation may have federal income tax consequences for the Debtor and Holders of Claims and Interests.  The Debtor has not obtained and does not intend to request a ruling from the Internal Revenue Service (the "IRS"), nor has the Debtor obtained an opinion of counsel with respect to any tax matters.  Any federal income tax matters raised by Confirmation of the Plan are governed by the Internal Revenue Code and the regulations promulgated thereunder.  Creditors and Interest Holders are urged to consult their own counsel and tax advisors as to the consequences to them, under federal and applicable state, local and foreign tax laws, of the Plan.  The following is intended to be a summary only and not a substitute for careful tax planning with a tax professional.  The federal, state and local tax consequences of the Plan may be complex in some circumstances and, in some cases, uncertain.  Accordingly, each Holder of a Claim or Interest is strongly urged to consult with his or her own tax advisor regarding the federal, state and local tax consequences of the Plan.

**A.**    **Tax Consequences to the Debtor.**    The Debtor may not recognize income as a result of the discharge of debt pursuant to the Plan because Section 108 of the Internal Revenue Code provides that taxpayers in bankruptcy proceedings do not recognize income from the discharge of debt.  However, a taxpayer is required to reduce its "tax attributes" by the amount of the debt discharged.  Tax attributes are reduced in the following order:  (i) net operating losses; (ii) general business credits; (iii) capital loss carryovers; (iv) basis in assets; and (v) foreign tax credits.

**B.**    **Tax Consequences to Unsecured Creditors.**    An Unsecured Creditor that receives only Cash in satisfaction of its Claim may recognize gain or loss, with respect to the principal amount of the Claim, equal to the difference between (i) the Creditor's basis in the Claim (other than the portion of the Claim, if any, attributable to accrued interest), and (ii) the balance of the Cash received after any allocation to accrued interest.  The character of the gain or loss as capital gain or loss, or ordinary income or loss, will generally be determined by whether the Claim is a capital asset in the Creditor's hands.  A Creditor will also recognize income or loss in respect of

consideration received for accrued interest on the Claim. The income or loss will generally be ordinary, regardless of whether the Creditor's Claim is a capital asset in its hands.

C. **Disclaimer.** Holders of Claims and Interests should not rely on this Disclosure Statement with respect to the tax consequences of the Plan. They should consult with their own tax counsel. The discussion of tax consequences in this Disclosure Statement is not intended to be a complete discussion or analysis.

## RECOMMENDATION

THE DEBTOR BELIEVES THAT CONFIRMATION OF THE PLAN IS PREFERABLE TO ANY OF THE ALTERNATIVES DESCRIBED ABOVE. THE PLAN WILL PROVIDE GREATER RECOVERIES THAN THOSE AVAILABLE IN LIQUIDATION TO ALL HOLDERS OF CLAIMS AND INTERESTS. ANY OTHER ALTERNATIVE WOULD CAUSE SIGNIFICANT DELAY AND UNCERTAINTY, AS WELL AS SUBSTANTIAL ADMINISTRATIVE COSTS. IF THE PLAN IS NOT CONFIRMED, THE CONTINUATION OF THE BANKRUPTCY PROCEEDING IS LIKELY TO HAVE AN IMMEDIATE ADVERSE IMPACT, PERHAPS IRREPARABLE, ON THE DEBTOR'S LONG TERM FINANCIAL VIABILITY. THUS, THE DEBTOR RECOMMENDS THE CONFIRMATION OF THE PLAN.

# SIGNATURES

TELEBRANDS CORP.


By: /s/ Ajit Khubani
    Ajit Khubani


Dated: November 21, 2000

## EXHIBIT "A"

## PREFERENCE ANALYSIS

## EXHIBIT "B"

## LIQUIDATION ANALYSIS

### ASSETS (Estimated Values, subject to expert valuation)

| | |
|---|---|
| Cash | $ 500.00 |
| Bank Accounts | $ 75,000.00 |
| Security Deposits | $ 0.00 |
| Stock Interests | $ 337,000.00 |
| Accounts Receivable | $1,000,000.00 |
| Intellectual Property | $ 0.00 |
| Equipment | $ 42,000.00 |
| MF&E | $ 16,000.00 |
| Inventory | $ 125,000.00 |
| Other | $ 190,000.00 (Quarters) |

**Total**      **$1,785,000.00**

### LIABILITIES( Estimated Values, subject to proof of nature extent and validity of liens)
### Asserted Secured Claims

| | |
|---|---|
| Warehouse Liens | $ 125,000.00 |

**Subtotal**      **$1,660,000.00**

| | |
|---|---|
| Rosenthal | $ 0.00 |
| Azad | $1,500,000.00 |
| Bax Global | $4,500,000.00 |

**Subtotal**      **$0.00**

### Estimated Administrative Expenses

| | |
|---|---|
| Chapter 7 (9% of assets) | $292,095.00 |
| Chapter 11 | Unknown |

Subtotal without a payment for chapter 11 administrative expenses is $0.00.

Amount available for unsecured and priority creditors is $0.00.

## EXHIBIT "C"
## PROJECTIONS

| | 2001 | % | 2002 | % |
|---|---|---|---|---|
| Gross Sales | $90,000,000 | | 118,000,000 | |
| Net Sales | 76,326,905 | 84.8% | 100,073,503 | 84.8% |
| Cost of Goods | 41,058,854 | 53.8% | 53,832,720 | 53.8% |
| Gross Profit on Sales | 35,268,501 | 46.2% | 46,240,333 | 46.2% |
| Commission Income | 1,144,904 | 1.5% | 1,501,096 | 1.5% |
| Gross Profit | 36,412,954 | 47.7% | 47,741,429 | 47.7% |
| | | | | |
| Operating Expense | | | | |
| Advertising | 14,621,930 | | 19,170,975 | |
| Selling | 7,864,526 | | 10,311,268 | |
| Distribution | 5,724,518 | | 7,505,479 | |
| G&A | 6,487,787 | | 8,506,210 | |
| Interest Expense | 1,679,192 | | 2,201,607 | |
| Total Operating Expenses | 36,377,953 | | 47,695,539 | |
| | | | | |
| Income From Operation | $    35,001 | | $    45,890 | |
| | | | | |
| Distribution to Class 5 Claimants | $  825,000 | | $  1,200,000 | |

Debtors have not projected operating expenses and income for the final four years during which a percentage of Net Sales will be paid to Holders of Class 5 Claims. However, Debtors do project that gross sales and Net Sales will continue to grow at a rate of an estimated $25,000,000 per annum. Based upon this assumption, the distribution to Holders of Class 5 Claims would be as follows:

| Year | Assumed Net Sales | Dividend |
|---|---|---|
| 2001 | $ 76,326,905 | $  825,000 |
| 2002 | 100,073,503 | 1,200,000 |
| 2003 | 125,000,000 | 1,575,000 |
| 2004 | 150,000,000 | 1,950,000 |
| 2005 | 175,000,000 | 2,325,000 |
| 2006 | 200,000,000 | 2,700,000 |
| Total | | $10,575,000 |

Assuming that Class 5 Claims are Allowed in the total sum of $37,000,000, the anticipated distribution to Holders of Class 5 claims would be 28.58%, before considering costs and expenses of the Disbursing Agent. The dividend to Holders of Class 5 Claims may be higher due to distributions from avoidance power recoveries or lower if the Debtor does not meet its sales projections    or    if    Allowed    Class    5    Claims    exceed    $37,000,000.

## EXHIBIT "D"

## BALLOT

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| **In Re:** | **Chapter 11** |
| **TELEBRANDS CORP.,** | **Case No. 00-39548 (NLW)** |
| **Debtor.** | |

BALLOT FOR ACCEPTING OR REJECTING
DEBTOR'S PLAN OF REORGANIZATION

The Debtor's Plan Of Reorganization can be confirmed by the Court and thereby made binding on you if it is accepted by the holders of two-thirds in aggregate dollar amount and more than one-half in number of claims in each class voting in the Plan. In the event the requisite acceptances are not obtained, the court may nevertheless confirm the Plan if the Court finds the Plan accords fair and equitable treatment to a class rejecting it. **To have your vote count you must complete and return this Ballot to Lowenstein Sandler, P.C., 65 Livingston Avenue, Roseland, New Jersey 07068, Attention: Sharon L. Levine, Esq.**

A.    If you are the holder of a Secured Claim complete this section:

The undersigned, the holder of a secured claim in the unpaid principal amount of $_____ , hereby:

_____ Accepts the Plan.
_____ Rejects the Plan.

B.    If you are the holder of an Unsecured Claim complete this section:

The undersigned, the holder of an Unsecured Claim in the amount of $_____ hereby:

_____ Accepts the Plan.
_____ Rejects the Plan.

C.    If you are the holder of an Equity Interest (Stock) complete this section:

The undersigned, the holder of _____ shares of common stock hereby:

_____ Accepts the Plan.
_____ Rejects the Plan.

_____
Signature

Print Name:_____

Title/Position (If Applicable):_____

Name of Creditor:_____

Address:_____

_____

Telephone:_____

PURSUANT TO AN ORDER OF THE UNITED STATES BANKRUPTCY COURT, ANY BALLOT THAT IS NOT COMPLETED AS TO
ACCEPTANCE OR REJECTION, WILL BE DEEMED AND ACCEPTANCE OF THE PLAN OF REORGANIZATION